NOT FOR PUBLICATION                                    (Document No. 6)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JANE STONE, : | |
| : | Civil No. 12-465 (RBK/JS) |
| Plaintiff, : | |
| : | |
| v.  : | **OPINION** |
| : | |
| WINTER ENTERPRISES, P.C. t/a and/or : | |
| d/b/a SIGNATURE SMILES; : | |
| SUPERIOR SMILES, LLC t/a and/or d/b/a : | |
| SIGNATURE SMILES; SCOTT BROOKS : | |
| t/a and/or d/b/a BROOKE SCOTT, LLC, : | |
| and t/a and/or d/b/a SIGNATURE SMILES; : | |
| SCOTT BRUGGEWORTH, individually : | |
| and as the corporate alter ego of WINTER : | |
| ENTERPRISES, P.C., SUPERIOR SMILES : | |
| PLUS, LLC and SCOTT BROOKS; : | |
| ANNIKA BRUGGEWORTH, individually : | |
| and as the corporate alter ego of WINTER : | |
| ENTERPRISES, P.C., SUPERIOR SMILES : | |
| PLUS, LLC, and SCOTT BROOKS; : | |
| and JOHN DOES 1-5 and 6-10, : | |
| : | |
| Defendants : | |

**KUGLER**, United States District Judge:

      Plaintiff Jane Stone has brought suit against an array of business entities and individuals for alleged violations of the Family & Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* (2006), and the New Jersey Family Leave Act ("NJFLA"), N.J.S.A. 34B:11B-1 *et seq.* (2011). Currently before the Court is Defendants' Motion to Dismiss Plaintiff's complaint for failure to

state a claim upon which relief can be granted (Doc. No. 6). *See* Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the Court reaches the following conclusions: Plaintiff's FMLA claim will survive against the business entity Defendants, as well as against Defendant Annika Bruggeworth in her individual capacity. Plaintiff's NJFLA claim will be dismissed without prejudice as against all Defendants. Finally, all of Plaintiff's claims will be dismissed against Defendant Richard Bruggeworth, both in his individual capacity and as owner and operator of the business entity Defendants.

## I.   FACTUAL BACKGROUND[1]

Defendants[2] operate five dental offices in the State of New Jersey called "Signature Smiles," employing more than fifty people across all their locations. Compl. ¶¶ 13, 15-16. Defendants Winter Enterprises, P.C., Superior Smiles, LLC, and Scott Brooks are the business entities used to operate Signature Smiles. These entities are owned and managed by Defendants Scott Bruggeworth and Annika Bruggeworth,. *Id.* at ¶¶ 17-18.

Plaintiff was employed as a full-time office manager from August 23, 2010 until September 9, 2011 at the Carneys Point office, which is located within seventy-five miles of the other four locations. *Id.* at ¶¶ 11, 14. On August 22, 2011, upon learning that her mother had suffered a stroke, she advised her supervisor that she would need to take "family leave." Her supervisor directed her to contact Defendant Annika Bruggeworth.[3] Plaintiff left voicemails with Defendant Bruggeworth on August 22 and August 25. *Id.* at ¶¶ 23, 26. On August 31, Bruggeworth called Plaintiff to discuss her job performance. Bruggeworth told Plaintiff that she

---

[1] When considering the sufficiency of the factual allegations in a plaintiff's complaint, the Court, for purposes of deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), assumes such allegations to be true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).
[2] Plaintiff's complaint names five specific defendants (in addition to ten John Doe defendants): two individuals and three business entities. For purposes of simplicity, the Court's use of the term "Defendants" will refer generally to the Signature Smiles dental practice that employed Plaintiff from August 23, 2010 until September 9, 2011.
[3] The Court's subsequent references to "Defendant Bruggeworth" or "Bruggeworth" will refer to Annika Bruggeworth as opposed to her husband Scott Bruggeworth.

should be "nicer" at work; during the same conversation, Bruggeworth also said that she would have to "check into" the family leave request but that in the meantime, Plaintiff should "change her attitude."  Compl. ¶¶ 28-29.

On September 9, Plaintiff happened to inform her supervisor that a coworker had made a certain clerical error.  Shortly thereafter, Defendant Bruggeworth contacted Plaintiff to say that she had heard Plaintiff was "talking about" this co-worker.  *Id.* at ¶ 33.  Before Plaintiff could explain the situation further, Bruggeworth informed her that she had been terminated.

Plaintiff alleges that Defendants' decision to terminate her employment was motivated by her request for family leave.  Accordingly, she brought suit in this Court, claiming that Defendants had violated her rights under the FMLA and the NJFLA.  Defendants subsequently filed the instant motion to dismiss.

## II.  DISCUSSION

### A.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

**B.      The FMLA**

The FMLA seeks to "balance the demands of the workplace with the needs of families" by entitling employees under certain conditions[4][5] "to take reasonable leave for medical reasons." *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140-41 (3d Cir. 2004) (quoting 29 U.S.C. § 2601(b)(1)-(2)). Pursuant to regulations promulgated by the Department of Labor, an employer may not discriminate against employees who have made use of FMLA leave; specifically, employers "cannot use the taking of FMLA leave as a negative factor in

---

[4] A party asserting rights under the FMLA must demonstrate that both the employee and employer are "covered" under the Act. One such requirement is that the employer employ fifty or more employees. 29 U.S.C. § 2611(4)(A)(i) (2006). Defendants, in a footnote to their reply brief, argue that Plaintiff must meet the so-called "integrated employer" test because Plaintiff is allegedly seeking to combine the number of employees from separate entities to satisfy the fifty employee threshold requirement. The Court finds that consideration of this issue, if it is even applicable, is premature at this time. It will suffice for purposes of deciding the instant motion that Plaintiff has alleged that Defendants (meaning the business and individual entities used to operate the five Signature Smiles dental offices in New Jersey) "employ an excess of fifty employees across their locations." Compl. ¶ 15. Defendants are free to raise the integrated employer issue at a later stage in the litigation, such as on a motion for summary judgment.

[5] Plaintiff appears to have pled properly the threshold requirements establishing that both she and her employer are covered by the FMLA. *See* 29 U.S.C. § 2611(2)-(4).

employment actions." 29 C.F.R. § 825.220(c) (2009). This provision has given rise to a so-called "retaliation claim"; in order to prevail on such a claim, a plaintiff must show that (1) she took an FMLA leave[6]; (2) she suffered an adverse employment decision; and (3) the adverse decision was causally related to the leave. *Conoshenti*, 364 F.3d at 135.

### C. The NJFLA

The NJFLA creates the same general entitlement as does the federal FMLA: an employee may take time off of work to tend to family issues and upon her return must be restored either to her previous position or one with equivalent "benefits, pay, and other terms and conditions of employment." *See Santosuosso v. NovaCare Rehabilitation*, 462 F. Supp. 2d 590, 596 (D.N.J. 2006) (citing N.J.S.A. § 34:11B-7). In order to make out a prima facie case that a defendant employer has violated the NJFLA, a plaintiff must show that

> (1) plaintiff was employed by defendant; (2) plaintiff was performing satisfactorily; (3) a qualifying member of plaintiff's family was seriously injured; (4) plaintiff took or sought to take leave from his employment to care for his injured relative; and (5) plaintiff suffered an adverse employment action as a result.

*DePalma v. Building Inspection Underwriters*, 794 A.2d 848, 859 (N.J. App. Div. 2002). The plaintiff has the burden of producing "some credible evidence of each element of the cause of action." *Id.*

### III. ANALYSIS

Defendants' brief in support of their motion to dismiss Plaintiff's claim presents five arguments, four of which will receive consideration here.[7]

### A. "Improper Lumping" of Defendants

---

[6] The Third Circuit has interpreted this language broadly, finding that it is enough that a plaintiff simply requests, rather than commences, FMLA leave. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009).

[7] The fifth argument concerns the availability of either punitive or emotional distress damages under the FMLA. Plaintiff, in her opposition brief to Defendants' motion, has consented to the dismissal of her claims for these types of damages, thereby obviating the need to consider Defendants' fifth argument. Opp. Br. 13.

5

Defendants' first line of attack on the sufficiency of Plaintiff's complaint involves the Plaintiff's choice to name three business entity defendants and two individual defendants in her complaint. Specifically, Defendants assert that Plaintiff's claim must be dismissed because Plaintiff has failed to make "any specific factual allegation against Winter Enterprises, Superior Smiles Plus, Scott Brooks or Dr. [Scott] Bruggeworth." Def.'s Br. in Support of Mot. to Dismiss 6. Defendants rely on *ProCentury Ins. Co. v. Harbor House Club Condominium Assoc., Inc.*, 652 F. Supp. 2d 552 (D.N.J. 2009) for the proposition that such pleading deficiencies can be fatal to a plaintiff's claim where the defendants are "left to guess as to what the facts and allegations giving rise to alleged liability might be for each defendant." Def.'s Br. in Support of Mot. to Dismiss 6 (citing *ProCentury*, 652 F. Supp. 2d at 560-61).

*ProCentury* has little persuasive value in the present context. That case, concerning a dispute over insurance coverage, involved a complex set of claims and counterclaims, all of which were based on common law theories of contract and tort law. *See id.* at 554-55. The portion of the opinion that Defendants cite involved the insured party's allegation of negligence on the part of his insurer's agent. Given the rather attenuated relationship between these parties, the insured was obliged to test the boundaries of New Jersey negligence law by attempting to establish that an insurer's agent owes a duty to an insured. Ultimately, in resting upon this uncertain legal ground, the insured's claim was deemed deficient because "nowhere [did] it articulate what particular duty [the insurer's agent] had to [the insured] in this situation but more importantly how it failed to fulfill that duty." *Id.* at 560. Because the insured failed to explain how these basic requirements of any negligence claim applied to the parties in that specific case, the *ProCentury* court granted the insurer's agent's motion to dismiss.

6

The instant claim, on the other hand, suffers from no such deficiencies.  Plaintiff's complaint alleges that all five Defendants "operate a dental practice" at the specific Carneys Point, NJ location where Plaintiff was employed from August 23, 2010 to September 9, 2011. Compl. ¶ 7.  It further alleges that the three business entity defendants "are all utilized to operate 'Signature Smiles,' have common ownership and management, common business practices, common finances, [and] a common website."  *Id.* at ¶ 17.  Finally, the Complaint identifies Dr. Scott Bruggeworth as an "owner[] and/or operator[] of the corporate defendants."  *Id.* at ¶ 18. Despite Defendants' contention that Plaintiff has failed to articulate how principles of FMLA and NJFLA liability apply to each of the four defendants, the Court finds Plaintiff's logic quite straightforward: Plaintiff worked for a dental practice; that practice is formally organized as three separate business entities that operate in concert with each other; the business entities are owned and managed by Dr. Bruggeworth and his wife Annika; Plaintiff's employment in the dental practice was terminated, and Plaintiff argues that such termination violated the FMLA and the NJFLA.  Thus, all the business entity defendants are on notice that, as Plaintiff's employer, they may be liable if Plaintiff were to prevail.  As owner of the business entities, Dr. Bruggeworth may also be liable if Plaintiff can prevail on her veil-piercing or alter ego claims (discussed *infra* in Part III.B).  Thus, the Court fails to understand how the instant Complaint leaves Defendants having "to guess as to what the facts and allegations giving rise to alleged liability might be for each defendant."  Def.'s Br. in Support of Mot. to Dismiss 6 (citing *ProCentury*, 652 F. Supp. 2d at 560-61).  Accordingly, Defendants' motion to dismiss cannot succeed on a theory of "improper lumping."

**B.	Veil-Piercing and Alter Ego Allegations**

Defendants' next argument is that Plaintiff has failed to allege facts that support theories of either corporate veil-piercing or alter ego liability with respect to the five Defendants. Def.'s Br. in Support of Mot. to Dismiss 7. Because Plaintiff has brought suit under both federal and New Jersey statutes, it is necessary to consider the requirements for imposing this type of liability under Third Circuit and New Jersey common law.

    i.    *Federal Law*

In this Circuit, the veil-piercing inquiry generally involves a determination of whether "the debtor corporation is little more than a legal fiction." *Trustees of Nat. Elevator Indus. Pension, Health Benefit and Educational Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003). This inquiry involves consideration of the so-called *Pisani* factors:

> [G]ross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder."

*Id.* (referencing *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981)). In addition, while a party need not allege "actual fraud as a prerequisite for piercing the corporate veil," the factual situation must include an "element of injustice or fundamental unfairness." *Id.*

    ii.    *New Jersey Law*

Under New Jersey law, veil-piercing is appropriate if the parent entity has "so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent." *State, Dept. of Env. Protection v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983).[8] In addition, the

---

[8] Trial courts in this District have recast the "dominance" requirement thusly: "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist." *The Mall at IV Group Properties, LLC v. Roberts*, No. 02-4692, 2005 WL 3338369 at *3 (D.N.J. Dec. 8, 2005) (citing 1 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations*, § 41.30 (perm. ed. rev. vol. 1999)); *MSA Products, Inc. v. Nifty Home Products, Inc.*, No. 11-5261, 2012 WL 2132464 at *2 (D.N.J. June 12, 2012)

8

proponent of veil-piercing must show that the "parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud[9] or injustice, or otherwise to circumvent the law." *Id.* (citation omitted).

### iii.    Application

Plaintiff has made the following factual allegations concerning the three business entity Defendants: they have "common ownership and management, common business practices, common finances, [and] a common website." Compl. ¶ 17. Regarding the individual Defendants, Plaintiff alleges that they are "the owners and/or operators of the corporate defendants." *Id.* at ¶ 18. Simply stated, these allegations are nowhere near sufficient to support a veil-piercing or alter ego claim under either Third Circuit or New Jersey law. At best, Plaintiff has alleged one of the *Pisani* factors: that by commingling their finances, the business entity defendants do not observe corporate formalities. *See Lutyk*, 332 F.3d at 194. But Plaintiff has not alleged the existence of any other factor. *Cf. Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 529-30 (D. Del. 2008) (applying the *Pisani* factors and granting defendant's motion to dismiss plaintiff's alter ego claims because, among other reasons, an allegation of only one *Pisani* factor was not enough to give rise to the necessary inference that the defendants in question "operated as a single economic entity"). Thus, such scant pleading strongly suggests that Plaintiff has failed to allege the type of "dominance" by the parent over a subsidiary required under New Jersey law, *Ventron*, 468 A.2d at 164, as well as the circumstance required under Third Circuit

---

(citing *IV Group Properties*, 2005 WL 3338369 at *3). Notably, however, the Court could find no New Jersey state case embracing such language. In addition, at least one Third Circuit panel has suggested that it is appropriate as a matter of New Jersey law to consider the *Pisani* factors when determining whether the parent entity has dominated the subsidiary. *See Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) (applying New Jersey law). Nevertheless, the Court, for the reasons expressed herein, finds Plaintiff's veil-piercing and alter ego claims so lacking that resort to these federal cases appearing to interpret New Jersey law would have no effect on its analysis.

[9] Courts in this District interpreting the *Ventron* case have found that the proper standard does not require proof of common law fraud, but rather some "less rigid showing." *See, e.g.*, *Hunt Const. Group, Inc. v. Farina*, No. 11-4933, 2012 WL 72286 at *3 (D.N.J. Jan. 10, 2012); *IV Group Properties*, 2005 WL 3338369 at *3.

precedent that the corporation in question "is little more than a legal fiction." *Lutyk*, 332 F.3d at 194.

The Court need not make this determination conclusively, however, because Plaintiff's Complaint is absolutely deficient with respect to the second requirement of the federal and state veil-piercing doctrines. That is, Plaintiff has failed to allege any "element of injustice or fundamental unfairness," *Lutyk*, 332 F.3d at 194, or, relatedly, any attempt to "perpetrate a fraud, injustice, or [other circumvention of] the law," *Ventron*, 468 A.2d at 164, concerning Defendants' business. On this basis, then, the Court concludes that Plaintiffs have not alleged facts sufficient to support a claim for alter ego or veil-piercing liability under either federal or New Jersey law.[10]

## C. Individual Liability Allegations

Defendants assert that the NJFLA, unlike FMLA, does not allow for individual supervisor liability. Def.'s Br. in Support of Mot. to Dismiss 9. Plaintiff does not appear to dispute this contention. The FMLA's definition of "employer" includes, among other things, "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). This language has provided the basis for individual supervisor liability under the FMLA. *Haybarger v. Lawrence County Adult Probation & Parole*, 667 F.3d 408, 417 (3d Cir. 2012). However, such language is not found in the definition of "employer" in the NJFLA. *See* N.J.S.A. 34:11B-3(f). Further, the Court could not find any New Jersey cases imposing individual supervisor liability under the NJFLA. Thus, Plaintiff's NJFLA claim against Defendant Annika Bruggeworth in her individual capacity as

---

[10] As a result of this determination, and because Plaintiff has voluntarily withdrawn its individual liability claim against him, Pl.'s Opp. Br. 9, Defendant Scott Bruggeworth will be dismissed from the case.

Plaintiff's supervisor will be dismissed.  The FMLA claim against Ms. Bruggeworth, however, will stand.  *See Haybarger*, 667 F.3d at 417.

**D. Inadequate Factual Allegations**

Finally, Defendants claim that Plaintiff has not alleged facts regarding the circumstances of her termination sufficient to state a prima facie retaliation case under either the FMLA or NLFLA.  Both statutes will be considered in turn.

*i. FMLA Prima Facie Case*

As stated above in Part II.B, in order to sustain her FMLA retaliation claim, Plaintiff must allege facts indicating that (1) she took an FMLA leave; (2) she suffered an adverse employment decision; and (3) the adverse decision was causally related to the leave.  *Conoshenti*, 364 F.3d at 135.

Plaintiff was employed by Defendants.  Compl. ¶ 11.  She advised her supervisor that she would need to take "family leave" in order to take care of her mother who had just suffered a stroke.  *Id.* at ¶ 20.  This is sufficient to satisfy the first element.  *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009).  When Plaintiff was then terminated from her job, she suffered an "adverse employment decision," thereby satisfying the second element.  *See id.*

Plaintiff left two voicemails regarding her leave request with Defendant Bruggeworth.  Compl. ¶¶ 23, 26.  Defendant Bruggeworth never responded to Plaintiff concerning her request.  Instead, Defendant Bruggeworth first reprimanded Plaintiff about her job performance, and then, some weeks later, terminated her employment.  *Id.* ¶¶ 28, 34.  The Court finds that these factual allegations are *just* enough to satisfy the third element of causation.[11]  Thus, Plaintiff has stated

---

[11] The Court is aware that both parties have submitted various certifications presenting additional facts potentially relevant to the issue of causal relation.  Despite Defendants' argument to the contrary, the Court concludes that these additional documents should not be considered in deciding the instant motion to dismiss.  Instead, its inquiry is

an FMLA retaliation claim against Defendants that "plausibly gives rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 680)).

*ii. NJFLA Prima Facie Case*

To state a claim under the NJLFA, a plaintiff must allege facts showing that

> (1) plaintiff was employed by defendant; (2) plaintiff was performing satisfactorily; (3) a qualifying member of plaintiff's family was seriously injured; (4) plaintiff took or sought to take leave from his employment to care for his injured relative; and (5) plaintiff suffered an adverse employment action as a result.

*DePalma v. Building Inspection Underwriters*, 794 A.2d 848, 859 (App. Div. 2002). Based on the allegations in Plaintiff's Complaint cited in the preceding subsection, Plaintiff has satisfied elements one, three, four, and five of a prima facie case under the NJFLA.

However, nowhere in the Complaint does Plaintiff allege that she was performing to the satisfaction of her employer. To the contrary, all relevant indications in the Complaint suggest that her employer was not satisfied with her job performance at all. *See* Compl. ¶¶ 28, 33. For these reasons, Plaintiff has failed to plead properly all five elements of her prima facie case under the NJFLA. Accordingly, this claim will be dismissed.

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss Plaintiff's Complaint under Rule 12(b)(6) will be granted in part and denied in part. Specifically, Plaintiff's FMLA claim will survive against the business entity Defendants, as well as against Defendant Annika Bruggeworth in her individual capacity. Plaintiff's NJFLA claim is dismissed without prejudice

---

limited to the face of Plaintiff's complaint. The Court will, however, be pleased to consider these materials if Defendants file a motion for summary judgment on Plaintiff's remaining claims.

as against all Defendants.[12]  All of Plaintiff's claims will be dismissed against Defendant Richard Bruggeworth, both in his individual capacity and as owner and operator of the business entity Defendants.  The Court will issue an appropriate order.


Dated:   12/11/12                                             /s/ Robert B. Kugler            
                                                                     ROBERT B. KUGLER
                                                                     United States District Judge

---

[12] Because the Court bases its decision to dismiss this claim on a pure pleading deficiency, Plaintiff may move to amend her complaint to cure this defect.